IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR. No. 06-061S |
| | : | |
| KENT AWER | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE

## INTRODUCTION

Pursuant to Federal Rule of Evidence 804(b)(3), the defendant moves the Court to admit what are purported to be statements of Ms. Dianikqua Johnson, a deceased individual, into evidence in the trial of United States v. Kent Awer. The Court should deny the defendant's motion because the statements lack corroborating circumstances clearly indicating their trustworthiness.

## FACTS

On May 2, 2006, Patrolman Andrew D. Dubois with the East Providence Police Department stopped the defendant's rental vehicle for speeding and switching lanes. Dianikqua Johnson was driving the vehicle; the defendant, Kent Awer, who had rented the vehicle, was riding in the front passenger seat; and Lashon Simmons was riding in the back seat.

In the trunk, the officers found five bags. Each bag contained bars of Ivory soap, a technique commonly employed by narcotics traffickers to mask the scent of the narcotics. Inside one bag, the officers found a vacuum sealed bag containing numerous small baggies of crack cocaine packaged for

distribution. In that same bag, officers found paperwork belonging to the defendant. The officers also seized three cellular phones from the defendant. The crack cocaine seized was later sent to the laboratory where it was determined to contain cocaine base and weigh 531.2 grams.

All three individuals were taken to the police station. During a search of the defendant's person, officers seized approximately 3.2 grams of crack cocaine.[1] The defendant then gave a statement to Detective Chris Francesconi and Detective Darren Ellinwood, in which he admitted that he purchased the cocaine in New York. He told detectives he could buy one or two kilograms of powder cocaine at a time from his source of supply, and that he would meet his supplier after receiving a phone call from him. He told the detectives that he bought the cocaine

[1] The Court suppressed the crack cocaine seized from the defendant's person. The government is aware of no case law that precludes the Court from considering this evidence in determining the admissibility of Ms. Johnson's statements. The exclusionary rule bars the use of evidence in the government's case-in-chief, but does not prohibit the government or the Court from using the evidence in a variety of other contexts, including civil tax proceedings, habeas proceedings, grand jury proceedings, civil deportation hearings, parole revocation hearings, sentencing hearings and cross-examination of the defendant. See, e.g., United States v. Janis, 428 U.S. 433, 454 (1976) (tax proceedings); Stone v. Powell, 428 U.S. 465, 493 (1976) (habeas proceedings); United States v. Calandra, 414 U.S. 338, 349-52 (1974) (grand jury proceedings); Navarro-Chalan v. Ashcroft, 359 F.3d 19, 22 (1st Cir. 2004) (deportation proceedings); Pennsylvania Board of Probation v. Scott, 524 U.S. 357, 364 (1998) (parole revocation proceedings); United States v. Acosta, 303 F.3d 78, 84-86 (1st Cir. 2002) (sentencing proceedings); United States v. Morla-Trinidad, 100 F.3d 1, 6 (1st Cir. 1996) (impeachment).

"raw," and he refused to tell them who cooked the cocaine into crack.

The defendant and Ms. Johnson were arrested that evening, and state charges were brought against them. Ms. Johnson was incarcerated at the Adult Correctional Institution (ACI) on state charges. While at the ACI, she allegedly made a statement to two individuals with whom she was confined, Lynn Simas and Charlotte Holley, admitting that the drugs seized were hers. The defense has also produced a written statement allegedly authored by Ms. Johnson taking responsibility for the state charges and proclaiming that Mr. Simmons and Mr. Awer had no knowledge of her drugs.

Initially, the defendant hired the law firm of DiLibero & Coloian to represent him and Ms. Johnson.[2] (Exhibit 4, Transcript p. 6-7). Mr. Steven DiLibero represented the defendant, and his partner, Artin Coloian, represented Ms. Johnson. (Exhibit 5, Motion to Withdraw; Exhibit 6, Order to Show Cause, para. 7; Exhibit 7, Affidavit). While Mr. Coloian represented Ms. Johnson, he approached Special Assistant Attorney

---

[2] It is the government's understanding that DiLibero & Coloian began representing the defendant and Ms. Johnson on their case out of Tiverton, Rhode Island in March 2006. In the Tiverton case, an attorney from DiLibero & Coloian named Michael Doyle represented Ms. Johnson. DiLibero & Coloian continued to represent the defendant and Ms. Johnson on the state charges in this case; however, instead of Michael Doyle, Artin Coloian represented Ms. Johnson on the state charges related to this case. All three lawyers belong to the same law firm.

General Kurt Mutter and told him that Ms. Johnson was willing to take full responsibility for the case. In light of the facts recited above, Mr. Mutter refused Mr. Coloian's offer.

On July 3, 2006, Mr. Coloian filed a motion to withdraw from Ms. Johnson's case, and it was granted. On July 6, 2006, Mr. DiLibero filed a motion to withdraw from Mr. Awer's federal case, which was granted by United States Magistrate Judge David L. Martin on July 19, 2006. Ms. Johnson received a new attorney and was released on bail.

On October 31, 2006, this Court held a suppression hearing on the first motion to suppress filed in this case and Ms. Johnson was present for the hearing. (Exhibit 3, Transcript, p. 106). At that hearing, the defendant's attorney, Mr. Edward Roy, raised the issue of Ms. Johnson's signature on a ticket. Mr. Roy did not call Ms. Johnson to testify. In addressing that issue to the Court, he admitted that could not call Ms. Johnson to the stand because she was represented by counsel, and her counsel did not want Ms. Johnson to testify at the hearing. (Exhibit 3, Transcript, P. 110-11). Subsequent to the hearing, Ms. Johnson passed away.

On March 14, 2007, the defense produced a three page written statement allegedly authored by Ms. Johnson. There is no evidence as to how this statement came into the defense's possession. The first page of that statement indicates that it

was signed by Lieutenant Mullensky at the ACI on June 25, 2006. Lieutenant Mullensky told Detective Darren Ellinwood that although he does not remember signing Ms. Johnson's statement, he recognized his signature on the first page. He then stated if the statement had been more than one page when he signed it, he would have initialed each page.

The defense also produced two reports of investigation in which the defense investigator interviewed two women who were incarcerated at the ACI in June 2006. These two women, Charlotte Holley and Lynn Simas, claimed that Ms. Johnson told them in June 2006 that the drugs in the vehicle were hers.

In a subsequent interview conducted in preparation for this hearing, both women informed Detective Ellinwood that they were unaware of a written statement and both stated that Ms. Johnson did not want her boyfriend to go to jail. Ms. Holley further told Detective Ellinwood that she wondered if Ms. Johnson was "pulling everybody's leg, trying to be tough." Ms. Holley said that Ms. Johnson cried all of the time and that she was afraid to return to New York for some reason.[3] Ms. Holley also said that Ms. Johnson was afraid to testify against her boyfriend.

[3] Upon receiving bail on her Rhode Island cases, Ms. Johnson was transported to New York to face charges for falsifying a business record. At some point prior to the October 31, 2006 suppression hearing in United States v. Kent Awer, Ms. Johnson was released by the New York authorities.

In preparation for this hearing, the government obtained transcripts of state court proceedings, a letter written by Ms. Johnson to the Rhode Island Disciplinary Board, state court filings, a certificate of incorporation, prison records and recorded phone calls from the prison. All evidence obtained by the government in preparation for this hearing, including Detective Ellinwood's supplemental report regarding witness interviews, has been provided to the defense.

LAW

Fed. R. Evid. 804(b)(3) provides an exception to the hearsay rule allowing for the admission of a "Statement against interest" in certain limited circumstances. That rule reads:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed. R. Evid. 804(b)(3).

To admit Ms. Johnson's alleged statements pursuant to this exception, the Court must find the following: (1) that Ms. Johnson is unavailable;[4] (2) that the statement was against Ms.

[4] Ms. Johnson's unavailability is undisputed in this case.

Johnson's penal interest;[5] and, (3) that the statement is corroborated by circumstances that clearly indicate the statement's trustworthiness. See Fed. R. Evid. 804(b)(3); United States v. Amerson, 185 F.3d 676, 681 (7th Cir. 1999).

The defendant, as the proponent of the statements, bears the burden to demonstrate the existence of corroborating circumstances. See United States v. Paulino, 445 F.3d 211, 220 (2d Cir. 2006); Amerson, 185 F.3d at 685. "To carry this burden, [the proponent] must point 'to evidence that corroborates both the declarant's trustworthiness and the truth of the statement.'" Paulino, 445 F.3d at 220 (quoting United States v. Lumpkin, 192 F.3d 280, 287 (2d Cir. 1999)).

In drafting the rule, the Advisory Committee recognized that statements tending to exculpate the accused are more suspect and their admissibility should be conditioned on some indicia of trustworthiness. See Fed. R. Evid. 804(b)(3) advisory committee notes. Simple corroboration was deemed insufficient by the Committee, and the rule was written so as to preclude such

[5] A determination of whether a statement is against the declarant's penal interest involves a fact-intensive inquiry into the surrounding circumstances under which the statement was made. See United States v. Bradshaw, 281 F.3d 278, 286 (1st Cir. 2002) (affirming the district court's conclusion that the statements were not against the declarant's penal interest because they "represented a 'sophisticated and subtle' effort by [the declarant] and the appellant to avoid criminal responsibility on the precise charges lodged against them.").

statements unless "corroborating circumstances clearly indicate the trustworthiness of the statement." Id. (emphasis added); see United States v. Bradshaw, 281 F.3d 278, 286 (1st Cir. 2002). "The underlying concern . . . [was] that one criminal can make out-of-court statements exculpating another and then rather easily claim the privilege when the government seeks to cross-examine him to discredit the statement." United States v. Mackey, 117 F.3d 24, 29 (1st Cir. 1997); United States v. Barone, 114 F.3d 1284, 1300 & n.10 (1st Cir. 1997).[6]

To be admissible under the exception, the essential assertions within the statement, not merely other facts, must be corroborated by evidence that "'clearly indicate[s] trustworthiness.'" Id.; see United States v. Millan, 230 F.3d 431, 437 (1st Cir. 2000) (statement of deceased declarant insufficiently corroborated to admit pursuant to Fed. R. Evid. 804(b)(3)). Courts consider a number of factors, such as motive of the declarant, detail of the statement, circumstances of the case, amount of corroboration, and the effect of the statement on

[6] The First Circuit in Barone affirmed the district court's decision to admit statements offered by the government as statements against interest because of the detailed nature of the statements, the fact that the statements were made to close relatives of the declarant and because the declarant lacked a motive to lie. In analyzing the statements, the Court recognized that it was as yet undecided whether the rule required corroboration for statements that inculpated the accused as opposed to exculpated the accused, but chose to apply the rule as if corroboration were required. See Barone, 114 F.3d at 1300-01 & n.10.

the declarant, in assessing the statement's trustworthiness. See Paulino, 445 F.3d at 220 (motive to lie and impact); Bradshaw, 281 F.3d at 286 (insufficient corroboration); Amerson, 185 F.3d at 682 (impossibility in light of other evidence and evidence of fabrication); Barone, 114 F.3d at 1301 (motive to lie and detail). However, simply repeating the same story on different occasions to different individuals is insufficient corroboration. See Bradshaw, 281 F.3d at 286.

ARGUMENT

Even if Ms. Johnson were alive today, it is likely that she would invoke her Fifth Amendment rights given that she did not testify at the defendant's suppression hearing on October 31, 2006. (Exhibit 3, Transcript, pp. 110-11). In light of this fact, to admit out-of-court statements allegedly authored by Ms. Johnson in June 2006 poses the very problem the Advisory Committee sought to avoid in requiring corroborating circumstances. See Mackey, 117 F.3d at 29 (discussing the problem posed by an individual who makes an out-of-court statement assuming criminal responsibility, but then invokes her right against self-incrimination).

At the time Ms. Johnson allegedly made these statements, she and the defendant were represented by the same law firm and her attorney was paid for by the defendant. (Exhibit 4, Transcript, p. 6). Despite the obvious conflict of interest, Ms. Johnson's

attorney, Mr. Coloian, told Special Assistant Attorney General Kurt Mutter that Ms. Johnson was willing to take responsibility for the state charge. By the time of the defendant's October 31, 2006 suppression hearing, Ms. Johnson had new counsel and she did not testify. (Exhibit 3, Transcript, pp. 110-11).

When Ms. Johnson made the alleged statements in June 2006, she had a motive to lie. She was distraught and concerned for the defendant, her boyfriend and a man ten years her senior. Furthermore, the defendant was indicted federally and given his criminal record, the defendant faced a significant sentence. Ms. Johnson, on the other hand, faced state charges and did not have a criminal record, although she was charged but not yet convicted of falsifying a business record in New York. In other words, not only did Ms. Johnson have a motive to lie on behalf of the defendant given her relationship with him, but the impact of her statement for her was minuscule compared to the impact of a federal conviction upon the defendant. Compare Paulino, 445 F.3d at 220 (refusing to admit a father's statement on behalf of his son under similar circumstances).

In addition to Ms. Johnson's motive to lie on behalf of the defendant, Ms. Johnson was under pressure from the defendant to do so. The defendant via third party phone calls instructed Ms. Johnson to write a statement on his behalf. Furthermore, there is evidence that Ms. Johnson was afraid to testify against her

boyfriend, feared returning to New York, and had an incentive to bolster her reputation in the prison. Given their relationship, the age difference between the two, and the defendant's considerable experience with the criminal justice system as compared to Ms. Johnson's experience, the alleged statements were made under circumstances suggestive of improper influence and an effort to obstruct justice. Compare Bradshaw, 281 F.3d at 286 (affirming the district court's conclusion that the statements were not against the declarant's penal interest because they "represented a 'sophisticated and subtle' effort by [the declarant] and the appellant to avoid criminal responsibility on the precise charges lodged against them.")

Turning to the alleged statements themselves, there is considerable reason to suspect fabrication. Significantly, Ms. Johnson's statement is devoid of detail. On the first page, the page signed by Lieutenant Mullensky, Ms. Johnson simply writes "I take sole responsibility of this charge I am being charge (sic) with . . . Mr. Simmons and Mr. Awer thats being charge with me had no knowledge of my criminal activity."[7] (Exhibit 1, Written statement). In the two page statement, unsigned by Lieutenant Mullensky, Ms. Johnson describes a scenario in which she asked the defendant for a ride, he asked her to drive, and she placed

[7] Ms. Johnson's statement further opens the door to evidence of the defendant's prior narcotics convictions and his case from Tiverton, Rhode Island.

the drugs in his bag "because [she] felt his bag had more spots to hide the drugs in it and it did." (Exhibit 2, Written statement). No where in either statement does Ms. Johnson describe what kind of drugs were in the defendant's bag, where the drugs were obtained, how much drugs were present, or what she intended to do with the drugs.

This lack of detail is in stark contrast to the specific information about the cocaine the defendant provided to Detective Chris Francesconi and Detective Darren Ellinwood. The defendant described how he communicates with his supplier, the location of his supplier, the quantity of cocaine he could obtain from his supplier at any given time, and the fact that he obtained his drugs in the form of powder cocaine. When asked about who cooked the cocaine into crack, the defendant stopped talking.

Unlike in Barone, where the statements' trustworthiness were enhanced by the audience to whom they were made, in this case, the circumstances under which Ms. Johnson allegedly made the statements cast further doubt upon their reliability. Ms. Johnson was a New Yorker held in a Rhode Island correctional facility. She was 21 years old and alone. The defendant was her only known contact in the state. The written statement provided to the government comes from unknown origins, presumably the defendant himself, and the oral statements were made to fellow prisoners in an environment in which criminal bravado enhances a

prisoner's status amongst inmates. Additionally, none of the alleged statements were made subsequent to Ms. Johnson's release on bail.

The other evidence in the case corroborates the defendant's confession and none of it corroborates Ms. Johnson's alleged statements. The drugs were seized from the defendant's suitcase with the defendant's paperwork inside of it; the defendant rented the vehicle in which the drugs were transported; the defendant had crack cocaine on his person; the defendant's criminal history provides evidence of his knowledge, motive and intent to distribute the crack cocaine seized;[8] and the defendant confessed. There are no corroborating circumstances that clearly indicate the trustworthiness of Ms. Johnson's alleged statements.

---

[8] The government filed a notice pursuant to Fed. R. Evid. 404(b) on March 25, 2007.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Honorable Court deny the defendant's motion in limine.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER

SANDRA R. BECKNER
Assistant U.S. Attorney
New York Bar
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000/709-5001 (fax)
sandra.beckner@usdoj.gov

CERTIFICATION

On March 28, 2007, I caused the within “Government’s Response to Defendant’s Motion in Limine” to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Edward C. Roy
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney’s Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj