IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | Cr. No. 06-61S |
| | ) | |
| KENT AWER | ) | |

GOVERNMENT'S TRIAL MEMORANDUM

## I. The Indictment and Elements

The indictment charges KENT AWER with possession with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

The elements of Count I are as follows:

First, that defendant on or about May 2, 2006 possessed cocaine base, either actually or constructively;

Second, that he did so with a specific intent to distribute the cocaine base over which he had actual or constructive possession; and,

Third, that he did so knowingly and intentionally.

If the jury finds the government proved each of the above elements beyond a reasonable doubt, then the jury must answer the following question:

Did the offense involve 50 grams or more of cocaine base?

II. Factual Summary

The government expects the evidence in this case to show the following:

On May 2, 2006, Patrolman Andrew D. Dubois with the East Providence Police Department stopped the defendant's rental vehicle for speeding and switching lanes. Dianikqua Johnson was driving the vehicle; the defendant, Kent Awer, who had rented the vehicle, was riding in the front passenger seat; and Lashon Simmons was riding in the back seat.

In the trunk, the officers found five bags. Each bag contained bars of Ivory soap, a technique commonly employed by narcotics traffickers to mask the scent of the narcotics. Inside one bag, the officers found a vacuum sealed bag containing numerous small baggies of crack cocaine packaged for distribution. In that same bag, officers found paperwork belonging to the defendant. The officers also seized three cellular phones from the defendant. The crack cocaine seized was later sent to the laboratory where it was determined to contain cocaine base and weigh 531.2 grams.

All three individuals were taken to the police station. During a search of the defendant's person, officers seized approximately 3.2 grams of crack cocaine.[1] The defendant then

[1] The Court suppressed the crack cocaine seized from the defendant's person. The exclusionary rule bars the use of evidence in the government's case-in-chief, but does not prohibit the government from using the evidence for impeachment purposes

gave a statement to Detective Chris Francesconi and Detective Darren Ellinwood, in which he admitted that he purchased the cocaine in New York. He told detectives he could buy one or two kilograms of powder cocaine at a time from his source of supply, and that he would meet his supplier after receiving a phone call from him. He told the detectives that he bought the cocaine "raw," and he refused to tell them who cooked the cocaine into crack.

## III. Legal Issues

### A. Fed. R. Evid. 404(b) and 609

The defendant filed a motion in limine regarding the evidence that the government seeks to introduce pursuant to Fed. R. Evid. 404(b). The government will address the defendant's motion in limine regarding the evidence introduced pursuant to Fed. R. Evid. 404(b) in a separate filing.

The defendant's motion was in response to a notice filed by the government of its intention to introduce the following evidence of the defendant's knowledge, motive, and intent to distribute the crack cocaine seized from his suitcase:

1. On February 17, 1999, the defendant, Kent Awer, was convicted of Criminal Sale of a Controlled Substance in the Third

---

during cross-examination of the defendant. See Walder v. United States, 347 U.S. 62 (1954); United States v. Morla-Trinidad, 100 F.3d 1, 6 (1st Cir. 1996).

Degree, in violation of Section 220.39 of the New York Penal Law, in Broome County New York, Case No. 99-0117;

2. On December 8, 1995, the defendant, Kent Awer, was convicted of Criminal Possession of a Controlled Substance in the Third Degree, in violation of Section 220.16 of the New York Penal Law, in Broome County, New York, Case No. 95-697. The defendant was paroled on this charge on December 12, 1996;

3. On April 3, 1995, the defendant, Kent Awer, was convicted of Criminal Possession of a Controlled Substance in the Fourth Degree, in violation of Section 220.09 of the New York Penal Law, in Broome County, New York, Case No. 94-612;[2]

4. On July 29, 2005, in Tiverton, Rhode Island, the defendant, Kent Awer, possessed crack cocaine with the intent to deliver it and conspired to possess crack cocaine with the intent to deliver. On that date, law enforcement personnel seized approximately 0.5 grams of crack cocaine and $1,086 from the defendant's person. The defendant was sitting in the passenger seat of the vehicle. Dianikqua Johnson was driving the vehicle. Two men were sitting in the back seat, and one of those men, Theodore Wood, possessed approximately 2 ounces of crack cocaine. Officers also seized $11,690 from the defendant's vehicle. The

[2] The government intends to use this conviction for impeachment if the defendant testifies. See Fed. R. Evid. 609(b).

defendant admitted that the rental vehicle and the $11,690 were his.

B. Opinion Evidence

The government will offer the testimony of law enforcement personnel, in particular Officer Karl Jacobson, TFA Chris Francesconi, and Investigator Darren Ellinwood, who may testify based upon their extensive experience and training in the field of drug trafficking, to the methods and operations unique to the narcotics business. The government may also elicit testimony about the techniques used by law enforcement in a narcotics investigation.

Based upon their extensive training and experience, the agents may testify to the manner in which crack cocaine is manufactured, transported, sold and used. The agents may testify to the price of crack cocaine and what constitutes a distributable quantity of crack cocaine. The agents may testify that a “rock” of crack cocaine weighs approximately 0.2 grams or less and sells for $20. The agents may also testify that an ounce of crack cocaine sells for $800 to $1,200. From this information, the agents will testify to the retail and wholesale value of 531 grams of crack cocaine, and that the quantity of crack seized from the defendant’s suitcase is consistent with distribution.

The agents may also testify about the equipment used in the narcotics business, specifically, the use of cellular phones,

money and rental vehicles. They will testify as to how the equipment is used and the advantages provided to drug dealers by the use of such equipment. In particular, they may testify that rental vehicles are commonly used by drug dealers as a method for transporting their narcotics because it allows the dealers to avoid forfeiture and the use of rental vehicles affects law enforcement's ability to conduct surveillance of their activities. The officers may also testify regarding the use of cellular phones in the drug business.

The officers may testify to techniques used by drug dealers to avoid detection by law enforcement. The officers may testify that narcotics dealers may store soap with the narcotics while transporting the drugs to mask the scent of their narcotics. They may also testify regarding how dealers travel while transporting narcotics, and that people who engage in drug distribution, in particular large quantity drug deals, do not allow unaffiliated individuals near their operations. That is, in the officers' experience, drug dealers do not bring casual observers to a drug deal.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United

States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995) (agent allowed to testify to the street value of the crack cocaine seized, the visible characteristics of crack use in an addict and that the defendant manifested none of these symptoms, and that the quantity of crack possessed was consistent with distribution).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); see United States v. Pinillos-Prieto, 419 F.3d 61, 71-72 (1st Cir. 2005) (allowing agent testimony regarding the dangerous nature of drug organizations and why organizational leaders as well as innocent observers are not present during the actual handoff of narcotics); United States v. Garcia-Morales, 382 F.3d 12, 18-19 (1st Cir. 2004) (agent permitted to testify regarding the structure and operation of a typical drug

conspiracy); United States v. DiMarzo, 80 F.3d 656, 659-60 (1st Cir. 1996) (allowing testimony that drug dealers do not take innocent observers to drug deals); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

Likewise, agents may testify regarding the "tools of the trade" in the drug business. See, e.g., United States v. Alosa, 14 F.3d 693, 696-97 (1st Cir. 1994); United States v. Tejada, 886 F.2d 483, 486-87 (1st Cir. 1989); United States v. Allen, 269 F.3d 842, 846 (7th Cir. 2001) (allowing expert testimony regarding "'tools of the trade'"). In addition to testifying regarding the "tools of the trade," agents have been permitted to testify about the locations in which drug activity occurs. See United States v. Isler, 429 F.3d 19, 26-27 (1st Cir. 2005) (allowing agent testimony about the features of a drug house and that defendant's house was consistent with other drug houses); Ayala-Pizarro, 407 F.3d at 28-29 (allowing testimony regarding how drug points operate).

C. Documentary Evidence

The documents seized from the defendant's suitcase are admissible, non-hearsay evidence proving the defendant's connection to crack cocaine stored in that same suitcase. See United States v. Serrano, 434 F.3d 1003, 1005 (7th Cir. 2006) (receipts, bills, and other documents are not hearsay when offered as circumstantial evidence linking a defendant to a

particular location); United States v. Balthazard, 360 F.3d 309, 318 (1st Cir. 2004) (notes seized from the scene admissible as real evidence of a drug business); United States v. Anello, 765 F.2d 253, 261 (1st Cir. 1985) (two letters seized from a defendant's trash admissible to prove membership in the conspiracy and knowledge of other co-conspirators); United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. 1981) (letter admissible for non-hearsay purpose of linking conspirators to the location and to each other); United States v. Mejias, 552 F.2d 435, 446 (2nd Cir. 1977) (admitting hotel receipt, luggage invoice and business card to prove a link between the defendant and the motel in which the drug activity occurred); see also United States v. Paulino, 13 F.3d 20, 24 (1st Cir. 1994) (rent receipt seized from the apartment containing the drugs was admissible as an adoptive admission).

## IV. Requested Voir Dire and Jury Instructions

The government will file its proposed voir dire questions and jury instructions under separate cover. The evidence admitted or excluded at trial and the defense raised may impact which instructions the government will request at the close of the case.

V. Witness and Evidence List

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

VI. Estimated Time of Trial

The government estimates that it will take three days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov

**CERTIFICATE OF SERVICE**

On April 5, 2007, I caused the within "Government's Trial Memorandum" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Edward C. Roy, Esquire
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov