**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

(401) 709-5000
FAX (401) 709-5001

April 2, 2007

Mr. Edward Roy
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

Re: *United States v. Kent Awer*, CR-06-61S

Dear Mr. Roy:

The government intends to call several police officers in the trial of *United States v. Kent Awer* who may express opinion testimony based upon their training and experience.

A. Officer Karl Jacobson, New Haven Police Department

Officer Jacobson was an East Providence police officer for eight years. He was assigned to narcotics for four of the eight years he worked with the East Providence Police Department. Recently, he was hired by the New Haven Police Department. Prior to that, Officer Jacobson served on the Drug Enforcement Administration (DEA) task force for two and a half years. During his eight years with the East Providence Police Department, he worked on at least 1,000 drug cases, of which at least half he served as a case agent. TFA Jacobson has debriefed numerous defendants and informants. He also has been involved in thousands of motor vehicle stops, many of which involved the seizure of narcotics. He has worked undercover on numerous occasions, and purchased narcotics at least 100 times during his career. He has conducted surveillance, written federal wiretap affidavits, run the wire room, listened to numerous encoded drug conversations, written search warrant affidavits, executed search warrants, and planned and coordinated several large operations.

Significantly, Officer Jacobson has testified in the District of Rhode Island and Rhode Island state court to some or all of the following: the meaning of coded language, the street value of narcotics, the manner in which drugs are distributed at various levels in the supply chain, the use of cellular phones in furtherance of narcotics trafficking, the use of cooperators in drug investigations, and countersurveillance tactics employed by

APR - 3 2007

narcotics traffickers.

B. Task Force Agent Chris Francesconi

TFA Francesconi has worked for the East Providence Police Department for the past seven years. He has served as an investigator on the narcotics and vice unit for the last two and a half years. Most recently, he was assigned to the DEA Task Force. TFA Francesconi has worked on investigations involving marijuana, heroin, powder cocaine, crack cocaine, and a number of other narcotics. While assigned to the narcotics and vice unit, TFA Franscesconi has worked on at least 150 to 200 drug cases. Prior to that, while working as a patrol officer, TFA Francesconi encountered narcotics on numerous occasions. TFA Francesconi has debriefed a number of targets, and has worked undercover. He has attended training and seminars in the field of drug investigations, including a DEA school, the PACE school, interdiction schools, and the police academy. TFA Francesconi has been qualified as an expert in state court.

C. Investigator Darren Ellinwood

Investigator Ellinwood has worked in law enforcement for 16 years. He was a correctional officer for nine years prior to joining the East Providence Police Department, where he has worked for seven years. He has served as an investigator on the narcotics and vice unit for the last one and a half years. Investigator Ellinwood has worked on investigations involving marijuana, heroin, powder cocaine, crack cocaine, methamphetamine and a number of other narcotics. While assigned to the narcotics and vice unit, Investigator Ellinwood has worked on at least 100 to 150 drug cases. Prior to that, while working as a patrol officer, Investigator Ellinwood encountered narcotics on numerous occasions. Investigator Ellinwood has debriefed a number of targets. He also has attended training and seminars in the field of drug investigations.

D. Agent Opinion Testimony

The officers may testify to the methods and operations unique to narcotics trafficking. Specifically, they may testify to the price of crack cocaine; what constitutes a distributable quantity of crack cocaine; the equipment used in narcotics trafficking; and, the manner in which crack cocaine is manufactured, transported, packaged, sold and used. They may testify to what a cutting agent is, how it is used, and the purpose served by cutting agents. They may also testify to the tactics used by law enforcement in conducting narcotics investigations, including the use of cooperating witnesses. They may testify to the meaning of code words and the use of countersurveillance by narcotics dealers to avoid detection by law enforcement.

Based upon their training and extensive experience, the officers may testify that the crack cocaine seized in this case was a quantity typically held for distribution. They will testify that crack cocaine is sold on the streets of East Providence in "rocks." The rocks typically weigh 1/5 of a gram or less. The retail value of a rock is $20. Using this figure, the officers may testify to the retail value of the quantity of crack cocaine seized from the defendant. The officers may also testify that the price per gram decreases as the narcotics are sold in large quantities. They will testify that drug dealers add cutting agents to drugs to add bulk and increase their profits.

The officers will testify regarding the equipment used in the drug world. Specifically, they may testify that crack cocaine users typically have items such a pipe and steel wool on their person for ingesting crack cocaine. The officers may testify that cellular phones and rental vehicles are "tools of the trade" in the drug business. Drug dealers use rental vehicles to avoid potential forfeiture and to affect law enforcement's ability to conduct surveillance of their activities. The officers may testify that narcotics traffickers take steps to disguise their cell phones, and to inhibit law enforcement's ability to engage in electronic surveillance. The officers may also testify that soap is a technique commonly employed by drug dealers to avoid detection.

The officers may testify that people who engage in drug distribution, in particular large quantity drug deals, do not allow unaffiliated individuals near their operations. That is, in the officers' experience, drug dealers do not bring casual observers to a drug deal.

E. Chemist

As already disclosed, the government will be calling a chemist in this case to testify to the results of laboratory testing on the narcotics if the defendant will not stipulate to those results. Please let the undersigned know as soon as possible if there will be a stipulation. In the event that the defendant does not stipulate, the government will provide defense counsel with a curriculum vitae and a copy of the laboratory case file closer to the trial.

Sincerely,

ROBERT CLARK CORRENTE
United States Attorney

SANDRA R. BECKNER
Assistant United States Attorney