**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CR. No. 06-061S** |
| **KENT AWER** | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM**

During the last hearing held on the issue of the admissibility of out-of-court statements purportedly made by Ms. Dianikqua Johnson, the Court asked the parties to brief the following issues:

(1) May the Court consider information obtained in camera in ruling on the admissibility of evidence pursuant to Fed. R. Evid. 804(b)(3)?

(2) May the attorney-client privilege be breached to allow the lawyers to testify at a hearing regarding the admissibility of statements made to them during the course of their representation?

(3) If the privilege may be breached, are statements made by a client to her attorney admissible pursuant to Fed. R. Evid. 804(b)(3)?

**CONSIDERATION OF INFORMATION OBTAINED IN CAMERA**

Fed. R. Evid. 104(a) governs the admission of evidence. This rule provides that the Court shall determine the admissibility of evidence and in making its determination, the Court is not bound by the rules of evidence except those with respect to privileges. See Fed. R. Evid. 104(a).

In United States v. Zolin, 491 U.S. 554, 565 (1989), the Supreme Court concluded that no "express provision" of the Federal Rules of Evidence precluded the use of an in camera review to determine whether communications fall within the crime-fraud exception to the attorney-client privilege. In reaching its holding in Zolin, the Supreme Court recognized that Rule 104 precludes a court from considering privileged material in determining the admissibility of evidence; however, the Court determined that the subject communications were not privileged under Rule 104(a) while the question of crime or fraud remained open. Thus, the Court approved of the district court's use of an in camera proceeding to determine the applicability of the crime-fraud exception.

The case at hand involves different issues. At the May 7, 2007 hearing, the Court ruled that the communications between Ms. Johnson and her attorneys were privileged. Accordingly, Fed. R. Evid. 104 precludes the use of privileged statements in determining the admissibility of evidence.

Even the defense concedes that under the holding of Swidler & Berlin v. United States, 524 U.S. 399 (1998), Ms. Johnson's statements are privileged and a plain reading of Fed. R. Evid. 104 precludes the Court from considering such statements in ruling on the admissibility of evidence. As a result, the defendant asks the Court to breach the attorney-client privilege.

**BREACH OF THE ATTORNEY-CLIENT PRIVILEGE FOR THE HEARING**

The Swidler court emphasized the importance of the attorney-client privilege in encouraging the "full and frank communication between attorneys and their clients" and promoting "broader public interests in the observance of law and the administration of justice." Swidler, 524 US at 403 (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). The mere relevancy of the statements to a criminal proceeding, therefore, was not sufficient to breach the "oldest recognized privileg[e] for confidential communications." Id. at 403-11 (citing Upjohn, 449 U.S. at 389). Moreover, the Court noted that posthumous disclosure of such communications may be as feared as disclosure during the client's lifetime. Id. at 407. Accordingly, the Court explicitly refused to narrow the scope of the attorney-client privilege and allow production of the documents. Id. at 410-11.

In the case at hand, the government is unaware of any exception to attorney-client privilege that is applicable in this case. See, e.g., Swidler & Berlin, 524 U.S. at 404-05

(discussing the testamentary exception); In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005) (crime-fraud exception); In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp., 348 F.3d 16, 23-24 (1st Cir. 2003) (discussing waiver). Nor has the defendant identified any exception that would apply.[1] Instead, the defendant asks the Court to breach the attorney-client privilege arguing that his "right to present a defense outweighs the interest of society in maintaining the privilege."

The defendant cites to several Supreme Court cases holding that certain state evidentiary rules violated a defendant's constitutional rights. See generally Holmes v. South Carolina, 547 U.S. 319 (2006); Chambers v. Mississippi, 410 U.S. 284 (1973); Washington v. Texas, 388 U.S. 14 (1967). However, the cases cited by defendant involve specific applications of state evidence law that deprived a defendant of a fair trial under the

---

[1] At one point, the defendant asserts without any supporting law that a complaint allegedly written by Ms. Johnson and introduced at the hearing by defendant as a "known" writing for purposes of his handwriting comparison amounts to a waiver of the attorney-client privilege. However, the letter does not disclose the substance of any communications, and even if it were a waiver, the waiver is limited to what is needed by the lawyer in litigating the claim in question. See Bittaker v. Woodford, 331 F.3d 715, 721 (9th Cir. 2003). The defendant also asserts that Mr. Coloian's plea offer to the Assistant Attorney General somehow waives the privilege. If that were the law, however, then the privilege would be waived in virtually every criminal case. Simply because a defense counsel approaches a prosecutor with an offer to plead guilty does not result in the privilege being waived.

facts and circumstances of the particular case. In each of those cases, a unique aspect of state law either restricted the defendant's ability to cross-examine a witness or his ability to call a witness who was available. Neither is the case here. Moreover, none of the Supreme Court cases cited involved the issues of attorney-client privilege raised by the Court.

**MS. JOHNSON'S STATEMENTS TO HER ATTORNEY ARE NOT AGAINST HER PENAL INTEREST**

Even if the Court were to conclude that the attorney-client privilege should be breached, the statements at issue are hearsay and do not qualify as statements against interest pursuant to Fed. R. Evid. 804(b)(3). To be against a declarant's penal interest the statements must subject the declarant to criminal liability. See United States v. Bonty, 383 F.3d 575, 579 (7th Cir. 2004); see also Williamson v. United States, 512 U.S. 594, 599-600 (1994) (non-self-inculpatory statements within a generally self-inculpatory statement are not admissible).

At the time Ms. Johnson made statements to her attorneys, they were privileged. Because of the privilege, the statements were not against her penal interest. See, e.g., Morales v. Portuondo, 154 F.Supp.2d 706, 726 (S.D.N.Y. 2001) (concluding that statements to a priest and lawyer were not admissible under New York's exception for a statement against interest because of the privilege, but finding that under the unusual facts of that case the statements were admissible pursuant to New York's

residual exception); Revels v. Diguglielmo, 2005 WL 1677951 (E.D. Pa. July 18, 2005) (holding that declarant's communications with his lawyer were protected by the attorney-client privilege and therefore were not against his penal interests); see also United States v. Paulino, 445 F.3d 211, 220 (2d Cir. 2006) (noting that declarant may not have thought statements could be used against him because they were made to an attorney).

As an additional matter, at the time Ms. Johnson made the alleged statements, she was pending charges by the state. Although she faced a 10 year mandatory minimum,[2] all of that time could be suspended or served as probation under Rhode Island law. Her boyfriend, on the other hand, was and is pending federal charges with a potential mandatory minimum of life imprisonment. Ms. Johnson had a definite motive to fabricate a story on behalf of her boyfriend. Given Ms. Johnson's age, her lack of criminal history, and the leniency of the state system, to the extent her alleged statements were against her penal interest, she did not risk much in making those statements. See Paulino, 445 F.3d at 220 (refusing to admit statements pursuant to Fed. R. Evid. 804(b)(3) from a father, who had a motive to lie on behalf of his son and who was already pending drug charges and thus not at serious penal risk); United States v. Zirpolo, 704 F.2d 23, 27 (1st Cir. 1983) (refusing to admit affidavit of co-defendant who

[2] The statutory section addressing the quantity of drugs seized in this case is R.I. Gen. Laws § 21-28-4.01.1.

had already pled guilty given that the co-defendant may have felt that he was immune from further prosecution and could say whatever he wished to help a friend).

## CONCLUSION

For all the foregoing reasons, the Court should not consider the information received in camera in ruling on the admissibility of evidence pursuant to Fed. R. Evid. 804(b)(3); the attorney-client privilege should not be breached; and, the statements made to the attorneys by Ms. Johnson are not admissible pursuant to Fed. R. Evid. 804(b)(3).

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

# CERTIFICATE OF SERVICE

On May 14, 2007, I caused the within "Government's Supplemental Memorandum" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Edward C. Roy
Assistant Federal Public Defendant
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj