UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENT AWER,<br>Defendant | CR. No. 06-061S |

**ORDER**

On three days, April 18, April 26 and May 29, 2007 this Court heard witness testimony in support of the defendant's motion to admit certain hearsay statements and conversations of now-deceased Dianikqua Johnson. After considering the submitted testimony, the Court concludes that Ms. Johnson's written statement[1] is admissible, but that her conversations with attorneys Artin Coloian and Judith Crowell are inadmissible.[2] Additionally, the Court will deny in part and grant in part defendant's motion in limine to preclude evidence under Rule 404(b).

Rule 804(b)(3) of the Federal Rules of Evidence "makes statements against penal interest offered to exculpate a criminal

[1]The Court ruled during the course of the hearing that the statement was indeed Ms. Johnson's based on expert handwriting analysis testimony.

[2]In a previous order the Court concluded, after an in camera examination of these attorneys, that the attorney-client privilege must give way to the defendant's due process rights.

defendant inadmissible 'unless corroborating circumstances clearly indicate the trustworthiness of the statement[.]'" United States v. Amerson, 185 F.3d 676, 691 (7th Cir. 1999) (Posner, J. dissenting) (emphasis omitted).[3] The requirement for corroboration "is not unrealistically severe but does go beyond minimal corroboration." United States v. Mackey, 117 F.3d 24, 29 (1st Cir. 1997) (quoting United States v. Barrett, 539 F.2d 244, 253 (1st Cir. 1976)). An assessment of whether a statement is accompanied by sufficiently corroborative circumstances indicating trustworthiness is necessarily fact intensive and case-specific, and, at base, is a decision left to the considerable discretion of the trial judge. See Barrett, 539 F.2d at 253 ("In cases that are open to reasonable differences, [the Court of Appeals] is unlikely to substitute its judgment for that of the district court.").

Here, although a close call, the Court concludes that corroborating circumstances sufficiently establish the trustworthiness of Ms. Johnson's written statement such that it is admissible under Rule 804(b)(3). Ms. Johnson consistently asserted that she was responsible for the drugs and made statements to that

[3]During the course of this hearing, the defendant moved to expand his motion to allow into evidence the statements of Ms. Johnson to her attorneys. Ms. Johnson's statements made during her conversations with her attorneys, however, are inadmissible under this rule because they were not made against her penal interest. See Revels v. Diguglielmo, 2005 WL 1677951 (E.D. Pa. July 18, 2005); Morales v. Portuondo, 154 F.Supp. 2d 706, 726 (S.D.N.Y 2001). Thus, the only Rule 804(b) issue is the admissibility of the written statement.

effect to at least four different people under different circumstances. See Morales, 154 F.Supp.2d at 727 ("[T]he fact that a declarant has made numerous confessions to different individuals is an independent circumstance attesting to the trustworthiness and reliability of [the] declarant's statements."). She initially made this assertion to Attorney Coloian in a holding cell at the police station on the day she was arrested, and she maintained this position throughout her incarceration, repeatedly telling a number of fellow inmates and Attorney Coloian during three separate meetings. She also made this statement, with some particularity, to Attorney Crowell on a number of separate occasions, repeatedly expressing her concern that the defendant would be held responsible for the drugs even though they were hers. Ms. Johnson then went so far as to seek out the warden at the ACI to make a written, notarized statement stating that she was responsible for the drugs.

There is some circumstantial evidence indicating that Ms. Johnson was the defendant's girlfriend (although it is far from conclusive) suggesting that her effort to take responsibility could have been motivated by her desire to ensure that he did not go to prison. But this potential motivation to lie is mitigated, at least in part, by the known risk she faced in making the statement. Ms. Johnson was keenly aware that making such a public, inculpatory statement would subject her to criminal liability. See United States v. Innamorati, 996 F.2d 456, 475 (1st Cir. 1993) ("[F]or the

declaration to be trustworthy the declarant must have known it was against his interest at the time he made the statement.”). When Ms. Johnson first met with Attorney Coloian in the police station, she volunteered that the drugs were hers. Attorney Coloian immediately advised her of her rights against self-incrimination and counseled her to exercise that right. Attorney Crowell also advised Ms. Johnson of the potentially severe criminal liability she faced if she admitted responsibility for the drugs before entering a final plea deal to her charges. Ms. Johnson, however, continued in her efforts to take responsibility for the drugs even with the knowledge that doing so would subject her to criminal liability, and she steadfastly refused to finalize a plea arrangement for her charges because she (irrationally) feared that it would somehow negatively affect the defendant’s case. This behavior renders her statement more reliable because “a reasonable [person] in [her] position would not have made the statement unless [she] believed it to be true.” United States v. Jimenez, 419 F.3d 34, 44 (1st Cir. 2005).

Moreover, the circumstances in which Ms. Johnson made the bulk of her inculpatory statements, especially those to attorneys Coloian and Crowell, suggest that she was telling the truth because, for these, there was no motivation to lie. These statements were made within the attorney-client privilege and were therefore undiscoverable and confidential. These statements were,

therefore, not "bare testimony" designed to exculpate a co-defendant, see United States v. Zirpolo, 704 F.2d 23, 27 (1st Cir, 1983), but instead were confidential and unknown to the authorities. See Morales, 154 F.Supp. 2d at 727 (concluding that in making certain statements the defendant "had no reason to lie [to his priest and attorney] because he was seeking their advice and guidance, and he had every reason to believe that his conversations with them would be kept completely confidential."). Their consistency and likelihood of trustworthiness weighs significantly in favor of the trustworthiness of Ms. Johnson's written statement.

Of course, it may be the case that Ms. Johnson so vociferously sought to take responsibility for the drugs because she did not want to see her purported boyfriend, the defendant, go to prison; or it might even be the case that the defendant successfully persuaded her to "take the fall" as it were for his misdeeds. But, the government is "free to argue this matter to the jury; evaluation of this sort is what juries are for." United States v. Seeley, 892 F.2d 1, 4 (1st Cir. 1989); see also United States v. Doyle, 130 F.3d 523, 543 (2d Cir. 1997) ("The court does not have to conclude that the statements sought to be admitted were surely true, for it is the role of the jury - not the court - to assess the credibility of witness testimony."); United States v. Paguio, 114 F.3d 928, 933 (9th Cir. 1997) (same). It suffices at this

juncture that there exists clear indicia of reliability for Ms. Johnson's written statement. The written statement is therefore admissible and the defendant's motion with respect to the written statement is GRANTED.

It remains to determine whether Ms. Johnson's statements made during her conversations with her attorneys is admissible under the "residual exception" of Rule 807. This rule is "to be used only rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." United States v. Wright, 363 F.3d 237, 245 (3d Cir. 2004) (internal quotations omitted). Here, the Court concludes that the conversations are not highly probative or necessary because Ms. Johnson's written statement, the best evidence of her assertions, is admissible. Allowing the conversations would be merely cumulative, and therefore inappropriate for admission under Rule 807. See Copperweld Steel Co. v. Demag-Mannesmann-Bohler, 578 F.2d 953, 964-65 (3d Cir. 1978) (stating that admissibility under the residual exception is permissible, in part, "so long as the statement is more probative on the point for which it is offered than any other evidence readily procurable"). The defendant's motion to admit these conversations is, therefore, DENIED.

Finally, the Court will DENY in part and GRANT in part the defendant's motion in limine to exclude evidence of the defendant's

prior drug dealing. At issue is the defendant's July 29, 2005 arrest, his February 17, 1999 conviction for criminal sale of a controlled substance and his December 8, 1995, and April 3, 1995 convictions for criminal possession of a controlled substance. The government seeks to admit this evidence under Rule 404(b) for the purpose of proving intent and knowledge.

"[W]hen charges of drug trafficking are involved . . the admission of evidence of prior narcotics involvement to prove knowledge and intent" under 404(b) is permissible, subject, of course, to Rule 403. United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996). Especially where the drugs involved in each episode are the same (as here), see United States v. Francesco, 725 F.2d 817, 822 (1st Cir. 1984), and where the defendant places his lack of knowledge or intent at issue in the case, see id., evidence such as a past conviction is often relevant. See, e.g., United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990) ("[O]ne with such [drug] experience is more likely to recognize (and hence know) that the bags' contents were drugs than one without such experience."). Defendant's convictions, while somewhat dated, are probative of his intent and knowledge. The defendant's motion in limine as to these convictions will therefore be DENIED.

Nevertheless, allowing the government to introduce evidence relating to the 2005 arrest would be too prejudicial, in violation of Rule 403, and cumulative. Many outstanding issues are still

unresolved regarding that arrest (not yet a conviction), and allowing introduction of evidence surrounding this event would cause undue prejudice and delay, while supplying only marginal relevance on the issue of the defendant's knowledge and intent. The defendant's motion to preclude use of the 2005 arrest as evidence in this trial is GRANTED.

BY ORDER:

Deputy Clerk

ENTER:

William E. Smith
United States District Judge
Date: 5/30/07